[Cite as *In re K.J.*, 2021-Ohio-3455.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| IN RE: K.J. | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | |
| | : | |
| | : | Case No. 2021 CA 0008 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Court of Common
                               Pleas, Case No. F2018-0733



JUDGMENT:                      Affirmed



DATE OF JUDGMENT:              September 30, 2021



APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

GLORIA L. SMITH                         PAULA M. SAWYERS
670 Meridian Way, #188                  20 S. Second Street
Westerville, OH  43082                  Newark, OH  43055

                                        GUARDIAN AD LITEM
                                        ADAM JOHNSON
                                        25 E. Waterloo Street

Canal Winchester, OH  43110

*Wise, Earle, J.*

{¶ 1}   Appellant Tabitha Hensley, appeals the January 6, 2021 judgment of the Licking County Court of Common Pleas which denied her objections to the magistrate's decision granting the Licking County Department of Job and Family Services (herein "LCDJFS") permanent custody of K.J. Plaintiff-Appellee is JFS.

Facts and Procedural History

{¶ 2}   Appellant has not filed a transcript of the proceedings. We therefore glean the following facts from documents filed with the trial court.

{¶ 3}   K.J. was born on March 16, 2018. On October 28, 2018, K.J.'s mother was found unresponsive from a heroin overdose at a fast food restaurant. K.J. was with mother at the time. On October 29, 2018, an ex parte hearing was held and emergency shelter care of K.J. was granted to LCDJFS. Mother was granted visitation rights.

{¶ 4}   On December 7, 2018 JFS filed a case plan and on January 2, 2019, temporary custody was granted to LCDJFS. K.J. was placed with a foster family with which she strongly bonded. K.J. learned to walk and talk with her foster family.

{¶ 5}   K.J.'s mother worked her case plan well and filed a motion for legal custody on February 19, 2019. A hearing was held on the motion on April 3, 2019 and continued to June 26, 2019. On May 21, 2019, however, K.J.'s mother died of a drug overdose.

{¶ 6}   K.J.'s father was located in Florida however he was unable or unwilling to provide for K.J. and had no interest in participating in genetic testing to establish paternity.

{¶ 7}   On September 26, 2019, LCDJFS filed a motion for permanent custody of K.J. A hearing on the matter was scheduled for January 27, 2020.

{¶ 8}   More than three months later, on January 9, 2020, Appellant, who is a maternal half-aunt to K.J. and had a rocky relationship with K.J.'s mother, filed a motion for custody/kinship placement. Appellant and her husband reside in Kentucky. K.J. has never lived with them, nor had they ever been K.J.'s guardian. Appellant's husband did not join Appellant's motion for legal custody of K.J.

{¶ 9}   Appellant was not granted party status in this matter as she did not meet the requirements of Juv.R. 2(Y). She was nonetheless permitted to pursue legal custody of K.J. without party status. For the same reason, others seeking legal custody of K.J. including two other maternal half-aunts of K.J. and K.J.'s foster parents, were also denied party status.

{¶ 10} Appellant's motion for kinship custody was denied and her motion for legal custody was set for hearing.

{¶ 11} On August 25, 2020, the Guardian ad Litem filed a written report and recommendations.

{¶ 12} On September 1, 2020, K.J.'s foster parents signed and filed with the court a Statement of Understanding of Prospective Legal Custodians. They were also interested in adopting K.J.

{¶ 13} On September 1 and 2, 2020, by stipulation of the parties and all interested persons, all four motions seeking legal custody of K.J. were heard simultaneously. On December 3, 2020, the magistrate issued her decision granting permanent custody to LCDJFS, denying all other motions for legal custody, and terminating the parental rights of the putative father.

{¶ 14} While Appellant did file an objection to the magistrate's decision, the objections were untimely and unsupported. Nonetheless, in the interest of justice the trial court conducted an independent examination of the audio record, exhibits, and the magistrate's decision and found overwhelming evidence to support a finding that a grant of permanent custody to LCDJFS was in K.J.'s best interest.

{¶ 15} Appellant filed an appeal and the matter is now before this court for consideration. She raises one assignment of error as follows:

I

{¶ 16} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED PERMANENT CUSTODY TO THE AGENCY AND DENIED HER MOTION FOR LEGAL CUSTODY."

{¶ 17} In her sole assignment of error, Appellant argues the trial court abused its discretion by denying her motion for legal custody of K.J. Specifically Appellant claims the trial court demonstrated favoritism toward LCDJFS throughout the pendency of this matter and additionally went out of its way to exclude Appellant from being a party to the permanent custody hearing. We disagree.

{¶ 18} As an initial matter, Appellant has failed to provide this court with a transcript of the proceedings below. Pursuant to App.R. 9(B), it is the appellant's duty to file the transcript or any parts of the transcript that are necessary for evaluating the trial court's decision. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). "This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." *Id.* at 199, citing *State v. Skaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978). Without the filing of a transcript (or a statement of the

evidence or proceedings under App.R. 9(C) or an agreed statement under App.R. 9(D)), this court has nothing to pass upon and must presume the validity of the trial court's proceedings and affirm. *Id*. This means that "we must presume that the trial court acted with regularity and did not abuse its discretion." *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 21, 520 N.E.2d 564 (1988).

{¶ 19} Due to the lack of a transcript, our review is "limited to whether the trial court's application of the law to the magistrate's factual findings constituted an abuse of discretion." *Weston v. Weston*, 5th Dist. Stark App. No. 2000CA00084, 2000WL 1862830, *1 citing *Vistula Mgt. Co. v. Newson*, 120 Ohio App.3d 500, 503 698 N.E.2d 467 (1997), citing *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730, 654 N.E.2d 1254 (1995).

{¶ 20} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶ 21} Following the hearing, R.C. 2151.414(B) authorizes the court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able

to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶ 22} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶ 23} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 24} In this matter, the trial court denied Appellant's objections finding: 1.) Appellant was not a legal party to the proceedings, and that K.J. had never lived with Appellant nor had Appellant ever been her guardian; 2.) Appellant's husband had not joined in Appellant's pursuit of custody of K.J.; 3.) K.J. had bonded with her foster parents

and Appellant acknowledged that removing K.J. from the home of her foster parents would be detrimental to K.J; 4.) Appellant did not file a Statement of Understanding for Legal Custody as required by R.C. 2151.353(A)(3); 5.) The guardian ad litem recommended K.J.'s best interests would be served by a grant of permanent custody to LCDJFS; 6.) The magistrate's 25-page opinion addressed all required issues, both factual and legal and were supported by the audio record of the proceedings; 7.) Agreed with LCDJFS that Appellant's objections should be dismissed for both untimeliness as well as lack of party status, but nonetheless addressed the merits in the interest of judicial economy; 8.) Noted Appellant failed to provide the trial court with references to the transcript or references to the testimony presented to support her objections to the magistrate's decision and further failed to file any affidavit in support of her objections. 9.) Appellant's objections lacked the specificity required by Juv.R 40(D)(3)(b)(ii); 10.) that it was not required to consider placement with a relative before granting permanent custody to LCDJFS  (citing *In re M.H.*, 5th Dist. Tuscarawas 2016CA43, 2017-Ohio-1110 ¶ 24); 11.) the testimony of the assigned social worker in this matter was credible, and; 12.) the decision to grant permanent custody to LCDJFS was supported by overwhelming evidence.

{¶ 25} Based on the record before us, we find the trial court gave full and fair consideration to Appellant's objections despite their untimeliness, lack of transcript, and lack of support. We further find Appellant was not singled out for exclusion as a party as she failed to meet the requirements of Juv.R. 2(Y). Further, all parties seeking legal custody in this matter were denied party status yet permitted to participate in the proceedings. There is therefore no evidence on the available record to support a finding

the trial court's decision overruling Appellant's objections to the magistrate's decision was unreasonable, arbitrary, or unconscionable.

{¶ 26} The sole assignment of error is overruled.

{¶ 27} The judgment of the Licking County Court of Common Pleas is affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Wise, J., J. concur.

EEW/rw